# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COGNIS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 05 C 6344 |
| ) | |
| CHEMCENTRAL CORPORATION, ) | Judge Ruben Castillo |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cognis Corporation ("Cognis"), sued Defendant, CHEMCENTRAL Corporation ("CHEMCENTRAL"), alleging that CHEMCENTRAL's marketing of CAPCURE 3-800 ("CAPCURE"), both misappropriated Cognis's trade secrets and tortiously interfered with Cognis's contracts and business relations. CHEMCENTRAL moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 19 and 12(b)(6). For the foregoing reasons, this Court grants in part and denies in part CHEMCENTRAL's motion to dismiss.

## RELEVANT FACTS[1]

Cognis is a Delaware corporation with its principle place of business in Ohio. (R. 1, Compl. at 1.) Cognis developed CAPCURE, which is a distinctive curing agent for epoxy resin adhesive. (*Id.* at 2.) Cognis keeps the formula and production method for CAPCURE highly confidential, and it would be very difficult for another firm to reverse engineer CAPCURE. (*Id.* at 2-3.)

Gabriel Performance Products, LLC ("GabePro"), a former manufacturer of CAPCURE

---

[1] The facts recited here are taken from Cognis's complaint, which the Court accepts as true for purposes of this motion to dismiss. *Moranski v. GMC*, 433 F.3d 537, 539 (7th Cir. 2005).

for Cognis, now produces GPM-800, a CAPCURE equivalent, using the CAPCURE technology developed by Cognis. (*Id.* at 3-4.) Cognis and GabePro currently are litigating GabePro's use of the CAPCURE technology in Ohio state court. (*Id.* at 5.)

CHEMCENTRAL is an Illinois corporation with its headquarters in Cook County, Illinois. (*Id.* at 1.) CHEMCENTRAL, which is the world's largest privately held distributor of industrial chemicals, entered into an agreement with GabePro to market GPM-800. (*Id.* at 5.) CHEMCENTRAL formerly marketed CAPCURE for Cognis. (*Id.*) CHEMCENTRAL allegedly markets GPM-800 to the same customers who purchase CAPCURE and has used its CAPCURE customer lists for this purpose. (*Id.* at 6.) Cognis further alleges that CHEMCENTRAL has priced its product 10% below CAPCURE in order to attract Cognis's customers to purchase GPM-800 instead of CAPCURE. (*Id.* at 5.) Thus, Cognis alleges that CHEMCENTRAL has tortiously interfered with the business relationship between Cognis and its customers. (*Id.* at 6.)

## LEGAL STANDARD

In considering a motion to dismiss for failure to join an indispensable party under Rule 19, the Court must first decide if the absent party is one that should be joined if feasible. Fed. R. Civ. P. 19(a); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). If the Court concludes that the party should be included in the action but it cannot be, the Court must decide whether the litigation can proceed at all in the party's absence. *Id.* The relevant question is whether, "in equity and good conscience," the action should proceed without the absent party. Fed. R. Civ. P. 19(b); *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996). "Courts generally will dismiss only when serious harm may result from nonjoinder." 4 Moore's Federal Practice – Civil § 19.02[3][c].

In considering a motion to dismiss a complaint under Rule 12(b)(6), a court will consider

2

all allegations in the light most favorable to the non-moving party, and will treat all well-pleaded facts and allegations as true. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004). Furthermore, all reasonable inferences will be drawn in favor of the plaintiff. *Id.* The Court will not dismiss the complaint unless there is no set of facts consistent with the complaint that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 46 (1957).

## ANALYSIS

### I. Failure to Join a Necessary and Indispensable Party

CHEMCENTRAL argues that the Court lacks jurisdiction over this dispute because GabePro is an indispensable party under Rule 19 whose joinder would destroy diversity jurisdiction. A person should be joined, if feasible, if the person "claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the party's ability to protect that interest." Fed. R. Civ. P. 19(a); *Casualty Indem. Exchange v. Crete*, 731 F.2d 457, 461 (7th Cir. 1984).

#### A. Necessary Party

First, the Court must determine whether GabePro, as the manufacturer of GPM-800, is a necessary party. The Court must consider: (1) whether complete relief can be accorded without joinder; (2) whether the absent party's ability to protect its interest will be impaired; and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless he is joined. *Davis*, 268 F.3d at 481. Although the plaintiff's complaint alleges tortious conduct by GabePro, this in and of itself cannot be the basis of a finding that GabePro is a necessary party because "it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498

3

U.S. 5, 7 (1990). However, since Cognis seeks to enjoin CHEMCENTRAL from distributing GPM-800 and to enjoin persons acting in concert with CHEMCENTRAL, the relief sought could impede GabePro's ability to distribute its competing product and protect its interests. Furthermore, GabePro is already a party to the litigation in Ohio, and it may be subject to multiple or inconsistent obligations if it is not joined in this case. These issues indicate that GabePro should be joined in this action.

### B. Indispensable Party

Because both GabePro and Cognis are Ohio citizens, this Court cannot join GabePro to this action without destroying diversity jurisdiction. (R. 20-1, Def.'s Mot. to Dismiss at 7; R. 20-3, Decl. of Robert Baraona ¶1). Thus, the Court must determine whether, in equity and good conscience, this action should proceed in GabePro's absence.

The Court is instructed to examine the following factors in deciding whether the action can proceed under Rule 19(b):

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Applying the first factor, the Court must analyze whether the "practical interests" of a party will be impaired by nonjoinder. *See United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996). If Cognis wins an injunction against further distribution of GPM-800 by CHEMCENTRAL, GabePro will have lost the ability to have its product distributed by CHEMCENTRAL. This prejudice, however, is more apparent than real, because such distribution will only be enjoined if it is tortious, and GabePro has no legitimate

interest in having its product distributed unlawfully. *Compare Pasco Int'l (London), Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501-02 (7th Cir. 1980) (finding that several sources of alleged prejudice are insufficient to make a third party indispensable under Rule 19). Cognis also seeks an injunction against persons acting in concert with CHEMCENTRAL, which might include GabePro. If Cognis succeeds in obtaining all relief it seeks, GabePro might be enjoined from pursuing its manufacturing of GPM-800 without having the opportunity to present its own case. Therefore, GabePro will be prejudiced by a judgment rendered in its absence.

None of the current parties, however, will be prejudiced by GabePro's absence from this litigation. CHEMCENTRAL alleges that it will encounter difficulty in obtaining evidence subject to a protective order in the Ohio action, (R. 20-1, Def.'s Memo at 8; R. 20-6, Ohio Protective Order), but the Court finds this assertion to be without merit. The order, by its terms, only applies to material produced through the Ohio discovery—not to appropriate discovery in this action. (R. 20-6, Ohio Protective Order at 2, 7.) Furthermore, the order's protections could be waived by GabePro's consent or the Ohio court could modify it as necessary. Therefore, this Court concludes that while GabePro will be prejudiced by a judgment rendered in its absence, CHEMCENTRAL will not be prejudiced by GabePro's nonjoinder.

Next, the Court must determine the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice to GabePro could be lessened or avoided. Fed. R. Civ. P. 19(b). The Court could limit any injunctive recovery to CHEMCENTRAL only. Such relief is consistent with the common law principle that a victim only has to sue one tortfeasor and Rule 19 should not be used as a means of forcing a plaintiff to join another alleged tortfeasor. *See Salton*, 391 F.3d at 878.

In addition, judgment against CHEMCENTRAL would be adequate in GabePro's absence because the Court could shape the relief to avoid any Due Process problems stemming from an injunction issued in GabePro's absence. Therefore, in GabePro's absence, the Court would still be able to issue an adequate judgment with both injunctive relief and damages against CHEMCENTRAL, if warranted.

It is less clear whether Cognis will have an adequate remedy if this action were dismissed for nonjoinder because the parties have not addressed this. Nevertheless, "while the availability of the alternative forum renders a Rule 19(b) dismissal less onerous, we do not view the availability of an alternative remedy, standing alone, as a sufficient reason for deciding that the action should not proceed among the parties before the court." *Pasco Int'l*, 637 F.2d at 501. As none of the other factors clearly weigh in favor of a finding of indispensability and neither judicial economy nor fairness counsel in favor of a dismissal for failure to join GabePro, there is no serious harm that will result from nonjoinder. Thus, in equity and good conscience, CHEMCENTRAL's motion to dismiss for failure to join an indispensable party under Rule 19 is denied.

## II. Failure To State A Claim Under Rule 12(b)(6)

### A. Misappropriation of Trade Secrets

Cognis alleges that CHEMCENTRAL misappropriated Cognis's trade secrets by distributing GPM-800 when CHEMCENTRAL knew or should have known that GabePro had manufactured GPM-800 by misappropriating Cognis's CAPCURE technology, which Cognis claims is a trade secret. (R. 1, Compl. at 7.) Because this case is brought pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332, the law of the forum state, Illinois, determines the substantive law. *Salton*, 391 F.3d at 879. Under Illinois law, a misappropriation claim is subject

to either the law of the defendant's principle place of business or the law of the state where the misappropriation took place. *Id*; *Mergenthaler Linotype Co. v. Leonard Storch Enters.*, 383 N.E.2d 1379, 1389-90 (Ill. App. Ct. 1978). Because Cognis's complaint does not specify the state where the misappropriation took place, the Court will apply the law of CHEMCENTRAL's principle place of business—Illinois.

The Illinois Trade Secrets Act provides that a trade secret is misappropriated when it is either acquired by improper means, or in certain circumstances, disclosed or used without consent. *See* 765 Ill. Comp. Stat. § 1065/2(b) (2005).[2] Nowhere in its complaint or elsewhere does Cognis allege that CHEMCENTRAL ever knew the formula or manufacturing process for CAPCURE or GPM-800. Instead, Cognis alleges that distribution of a product manufactured by another's use of a trade secret constitutes use of that trade secret. The Illinois Trade Secrets Act is based on the Uniform Trade Secrets Act of 1985, *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005), but neither Act defines what actions constitute "use" for purposes of establishing a claim for misappropriation of trade secrets. The Seventh Circuit and the Illinois state courts also do not define what it means to "use" a trade secret, and whether such "use" can actually be accomplished without actually knowing what the secret is. However, Illinois courts

---

[2]The Illinois Trade Secrets Act provides that:

"Misappropriation" means:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure or use of a trade secret of a person without express or implied consent by another person who: (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was: (I) derived from or through a person who utilized improper means to acquire it; (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

765 Ill. Comp. Stat. §1065/2(b) (2005).

7

have noted that:

> A misappropriation of trade secrets occurs when a person acquires or discovers a trade secret by improper means or discloses or uses a trade secret in breach of a duty of confidentiality imposed on him by the nature of his relationship with the owner of the trade secret or reposed in him by the owner in disclosing the information, and the owner of the trade secret is damaged by this improper acquisition, disclosure, or use.

*Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 281 (Ill. App. Ct. 2005) (citing *American Antenna Corp v. Amperex Electronic Corp.*, 190 Ill. App. 3d 535, 538 (Ill. App. Ct. 1989)). The idea of "use" as embodied in this language indicates that the third party's actions have to be improper and damage the owner of the secret to some extent. This suggests that "use" is a very broad concept. Such a construction is consistent with the Restatement (Third) of Unfair Competition, which is often relied on by the Seventh Circuit in analyzing trade secret claims. *See, for example, Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 728 (7th Cir. 2005) (relying on the Restatement (Third) of Unfair Competition and the Uniform Trade Secret Act to determine the criteria for trade secret protection); *Salton*, 391 F.3d at 878 (relying on the same to determine the scope of legal protection of trade secrets); *see also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 989 (7th Cir. 2004). The Restatement states:

> There are no technical limitations on the nature of the conduct that constitutes "use" of a trade secret . . . As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" . . . Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret . . . all constitute "use." The nature of the unauthorized use, however, is relevant in determining appropriate relief.

Restat 3d of Unfair Competition, § 40 cmt. c (1995).

Consistent with these principles, Cognis asserts that CHEMCENTRAL was its distributor but now works for GabePro, who is unlawfully using its trade secrets; that CHEMCENTRAL knew from its prior dealings with Cognis that Cognis protected the CAPCURE technology as a trade secret; that CHEMCENTRAL used its prior relationship with Cognis in order to price GPM-800 cheaper than CAPCURE and solicit Cognis's customers; that CHEMCENTRAL knew about the Ohio lawsuit between Cognis and GabePro; and that despite this knowledge, CHEMCENTRAL still accepted GabePro's baseless claim that it had the right to use the CAPCURE technology without verification. This Court will not grant a motion to dismiss unless there is no set of facts consistent with the complaint that would entitle the plaintiff to relief. However, Cognis's allegations show that it is possible, under a broad reading of the word "use," that it may be able to show that CHEMCENTRAL misappropriated its trade secrets. Therefore, the Court finds that Cognis's claim for misappropriation of trade secrets states a claim upon which relief can be granted.

### B.     Intentional Interference with Contract and/or Business Relations

Cognis's second and final count alleges that CHEMCENTRAL intentionally and unjustifiably interfered with contracts and/or business relations between Cognis and certain unspecified clients. (R. 1, Compl. at 10.) Cognis alleges that by marketing GPM-800 to Cognis customers and causing some of them to discontinue their relationships with Cognis, CHEMCENTRAL has disrupted those contracts or business relations. (*Id.*) Cognis also alleges that CHEMCENTRAL's actions were based, in part, on CHEMCENTRAL's misappropriation of Cognis's trade secrets. (*Id.*)

First, this Court must determine what law applies to the intentional interference claim. The law

of the forum state determines the substantive choice of law in a diversity case. *Fredrick v. Simmons Airlines*, 144 F.3d 500, 503 (7th Cir. 1998). In tort claims, Illinois applies the "most significant contacts" test. *Id.* at 503-04. Under this test, the Court examines four factors to determine the applicable law: (1) the place of injury; (2) the location of the tortious conduct; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered. *Id.* at 504. The place of the injury is Ohio and the domicile of Cognis and CHEMCENTRAL is Ohio and Illinois, respectively. The remaining factors are less clear—Cognis does not discuss how much business CHEMCENTRAL transacts in Ohio or how much of CHEMCENTRAL's alleged conduct in this case was targeted at Ohio residents. Therefore, this Court cannot determine the location of the tortious conduct or the place where the relationship between the parties is centered. Nonetheless, the place of injury generally controls in tort claims unless another state has a more significant interest. *Id.* at 504 (*citing Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)). There is no indication in the pleadings that another state has a more significant interest than the place of the injury. Therefore, the law of Ohio, the place of injury, applies to the intentional interference claims. *See Esser*, 661 N.E.2d at 1141.

Under Ohio law, a plaintiff shows intentional interference with a contract by proving: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages. *Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). Cognis cannot establish a claim for intentional interference with a contract because it has not alleged the breach of any specific contracts. *See Tiger, Inc. v. Time Warner Ent't Co., L.P.*, 26 F. Supp. 2d 1011, 1020 (N.D. Ohio 1998) ("Interference with contract requires an actor to improperly interfere

with the performance of a contract between two other persons."). Therefore, its complaint fails to state a claim for intentional interference with a contract.

The tort of intentional interference with business relations requires proof that the defendant, without a privilege to do so, induced a third person not to enter into or continue a business relation with another. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const.*, 651 N.E.2d 1283, 1294 (Ohio 1995); *Reali Giampetro & Scott v. Soc'y Nat'l Bank*, 729 N.E.2d 1259, 1265 (Ohio Ct. App. 1999). Cognis alleges that CHEMCENTRAL lacked a privilege to solicit Cognis's customers because CHEMCENTRAL misappropriated Cognis's trade secrets. Cognis further alleges that CHEMCENTRAL is using its previous relationship as Cognis's distributor in order to solicit Cognis's existing customers and offer GPM-800 at a significantly lower price. These statements are sufficient to allege that one is acting without privilege. *See United Rentals, Inc. v. Keizer*, 355 F.3d 399, 413 (6th Cir. 2004) ("An essential element of a claim for . . .tortious interference with business relations . . .that the alleged tortious conduct be wrongful."); *Walter v. Murphy*, 573 N.E. 2d 678, 680 (Ohio Ct. App. 1988) (stating that one acts without privilege if he employs wrongful means). Therefore, Cognis has stated a claim for intentional interference with business relations.

## CONCLUSION

Cognis has failed to state a claim upon which relief for intentional interference with a contract, but it has stated a claim for misappropriation of trade secrets and tortious interference with business relations. Therefore, CHEMCENTRAL's motion to dismiss is granted in part and denied in part. (R. 19-1.)

The parties are requested to exhaust all remaining settlement possibilities in light of this opinion. A status hearing will be held in open court on May 23, 2006 at 9:45 a.m. to discuss: 1) the settlement status of this lawsuit and 2) an appropriate litigation schedule for this case.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated:** May 5, 2006